We have three cases to be argued this morning, and we'll get started with the first case, which is Michael George LaHood versus William Stevens. And I'll hear first from Ms. Salomon. May it please the Court. Mr. LaHood raises two related issues that must nevertheless be decided on distinct sets of evidence. Both claims, though, are subject to the highly deferential AEDPA standard of review. When the issues are properly parsed and then viewed through AEDPA's lens, it becomes clear that the state courts reasonably denied relief on both claims. The lower federal court failed to take this approach, and its decision should be reversed. Given the nature of Mr. LaHood's claims, I would like to turn first to his due process claim. A due process claim like the one Mr. LaHood alleges, under Pate versus Robinson, must be considered only on evidence that was before the trial court. The Supreme Court has not established a standard for when a trial court must sua sponte raise the issue of a defendant's legal competency. In fact, the Supreme Court has only found such a due process violation in two distinguishable cases. So is your first argument that there's no, without a binding Supreme Court case, there's no, the other side can't win without a binding Supreme Court case on this context? Given that the state appellate court has already found that there wasn't what Texas requires, which is a bona fide doubt as to the defendant's legal competency, under the facts of this case and existing Supreme Court precedents, so long as that decision was reasonable, as any reasonable jurist could agree with the state court's decision, then under AEDPA relief is not warranted. Okay. Is it that it was a ground that they followed state law as a separate reason that you went on that? That the state law says this is what you have to do when you have to have a sua sponte hearing, and the court found that state law was complied with? How do those two points work together? The Supreme Court has established that a due process claim exists, a federal due process claim under the Constitution. The only guidance, though, that exists is the Supreme Court's holdings in Pate v. Robinson and Droop v. Missouri. Those cases are certainly factually distinguishable from this one, and neither case establishes a clear standard for when the trial court must raise this issue. Yes, as a matter of state law, the state courts have already determined that the trial court proceeded properly. Unless that's unreasonable, that shouldn't be disrupted on federal habeas review. There are three main ways in which the state appellate court properly analyzed this case, which the lower federal court failed to do. The first is an important note is that the only evidence of incompetency in this case came from Mr. LaHood himself, and that's very different from the cases that the Supreme There was no history of irrational behavior, no evidence of a history of irrational behavior from any witness, including Mr. LaHood, unlike in Pate v. Robinson where four different witnesses testified to a history of irrational behavior, to truly bizarre behavior. The defendant's wife testified in Droop v. Missouri. There was no expert medical opinion before the trial court suggesting that Mr. LaHood needed further psychiatric evaluation or treatment around the time of trial. There was no prior- Was it disputed that he was taking medication for psychiatric problems? The only evidence of that came from Mr. LaHood himself, but there was certainly evidence that Mr. LaHood suffered from mental illness and that he was being treated for mental illness before the trial court, evidence which came from Mr. LaHood. Of course, suffering from mental illness, even improperly medicated, is not per se evidence of legal incompetency. Legal incompetency revolves around a defendant's ability to understand the proceedings, to assist in his defense, and to communicate with his attorney. Of course, there are a number of mentally ill criminal defendants who are still legally competent to stand trial. Secondly, in this case, something that the appellate court seemed to consider that the lower federal court failed to consider is that the trial court was there exclusively and had the benefit of witnessing Mr. LaHood's behavior and his demeanor throughout the duration of trial. This is something that the Supreme Court pointed out in Droop v. Missouri and called opinion evidence, which should be weighed in light of any indications from Mr. LaHood that he might be incompetent. There were also indications from Mr. LaHood that he was absolutely incompetent. Thirdly, the state court also considered any evidence of incompetency in context. For example, perhaps the strongest indication from Mr. LaHood that he might be incompetent came during cross-examination. When that evidence is— You say that the trial judge could witness the incompetence of Mr. LaHood and the incompetence of his counsel at the same time? I'm sorry, are you asking about the interplay between Mr. LaHood's ineffective assistance claim and the trial court's failure to raise the issue? With respect to the fact that trial counsel didn't raise the issue of Mr. LaHood's competency before the trial court, that certainly weakens his due process claim. In neither case that the Supreme Court has considered has that been the case. In both of those cases, trial counsel did in some way raise the issue before the trial court. Of course, that does give rise to his Sixth Amendment ineffective assistance of counsel claim. Yes. It looked like triple error to me. I mean, triple. This trial judge should have, through his sponte, raised his competency and conducted a hearing. Well, importantly, the evidence that was before the trial court is different than the evidence that was before trial counsel and different than the evidence that was put forth on state habeas review. The medical records from jail, the expert opinions, none of those things were before the trial court during the time of trial. Again, all that the trial court had to go on at the time of trial was Mr. LaHood's own in-court behavior and his testimony that he suffered from mental illness and had missed medication. The trial court heard Mr. LaHood deliver a lengthy, detailed, fact-based, direct examination testimony that was favorable to his defense that the state court has already pointed out during which he delivered a competing theory of events, which if the jury had accepted would have led to a not guilty verdict. It was only on cross-examination, when frustrated, that Mr. LaHood began suggesting that he needed to, that he hadn't been receiving his medication and was having difficulty understanding the prosecutor's questions. The trial court was there. She witnessed his demeanor, his behavior, both on direct examination, on cross-examination, and when trial resumed the next day. The trial court alone was able to, based upon that, determine that she didn't have a bona fide legal competency. That is, his ability to understand the proceedings and to assist in his defense and communicate with his attorney. Because he was doing that. He was assisting with his defense. Absolutely. He delivered lengthy, detailed, direct examination testimony. He, as I said, the main points that Mr. LaHood makes as in explaining evidence of his incompetency are outbursts that occurred during trial and cross-examination testimony. Competent people can make outbursts because they're mad and frustrated. Is that what the Court of Appeals was persuaded? Yes. The state court has already found that they were outbursts. They were perhaps inappropriate and not in Mr. LaHood's best interest, but they were absolutely logical, rational responses to what was going on at trial, indicative, if the defendant facing serious charges and frustrated with the trajectory of his trial. Unfortunately, we sometimes have cases, and it's very sad, where people think that they're dealing with aliens or that they're hearing voices and all of that sort of, many kinds of, that they're not in the right, the place that they're in. Was there any sort of testimony or outburst that suggested that he was not in the courtroom and he was in an alien or that some kind of thing or that he was hearing voices or something that were invading his mind or, you know, those kind of cases? Those are the things that I think the Supreme Court has termed truly bizarre behavior or a history of irrational behavior, and no, none of that was present in Mr. LaHood's case. The evidence before the trial court was limited to his testimony that he suffered from mental illness, that he wasn't receiving medication, and that he was having trouble understanding the prosecutor's questions only on cross-examination, after having delivered uninterrupted, direct examination testimony. Now, when you say the evidence before the trial court, you're not suggesting that the trial court made some on-the-record determination about legal competence? No. The trial court never raised the issue because the trial court didn't view, didn't find there to be a bona fide doubt as to Mr. LaHood's legal competence. So the trial court didn't make that finding? I'm sorry, made? A finding about bona fide doubt. By not raising the issue, the state court has already found that the trial court didn't find there to be a bona fide doubt. I guess my question, though, is, did the trial court, on the record, say, I'm considering the issue of his legal competence and I'm making a finding that there is no bona fide — I have no bona fide doubt about his legal competence? No. That didn't happen? No. All right. That's a determination that we assume the trial court made by virtue of the state court having already found that it was reasonable for the state appellate court, that it was reasonable for the trial court not to have raised the issue. And under state law, there has to be a bona fide doubt as to legal competency for the trial court to be required to raise the issue. And the Supreme Court has already established that requiring a bona fide doubt, as Texas does, is constitutionally adequate. Now, do we have to assume, though, that in the ineffectiveness of counsel claim, that the prong one is satisfied, that you — they went on that? Our argument is that, in this case, it's unnecessary to reconsider deficiency, although the state court entered a deficiency finding that in no way relieves Mr. LaHood of his Under Strickland, Mr. LaHood must demonstrate a reasonable probability that he would have been found legally incompetent to stand trial. And importantly, in this case, the state court has already determined that he failed to do so. So unless no reasonable jurist could agree with the state court's determination, again, ADPA precludes relief. Most importantly in this case, trial counsel provided an affidavit. She unequivocally states that Mr. LaHood was able to communicate with her, to assist in his defense, and to understand the proceedings. And the state court found that affidavit credible. Almost — And that he was a misogynist and some other things, too, that didn't really seem relevant to effective assistance of counsel, but she deemed it necessary to include it. Yes. All right. And this was his own lawyer? This was his lawyer. Without attempting to — All Mr. LaHood has provided to counter trial counsel's affidavit, which again, the state court found credible, and the important relevant portions of that affidavit are where counsel categorically states that Mr. LaHood could communicate with her throughout the duration of trial, could assist in his defense, put forth suggestions of theories of defense that he would like to assert. All Mr. LaHood has provided are medical records, which show that he was being treated for mental illness and missed doses of certain medications during trial, and expert reports written post-conviction years later — Let's see if we can agree on something. And I know it's not the law, but see if you can agree with me that if a defendant says that I'm taking medication for mental illness, I mean, that's a little bit more than just outbursts in the courtroom and somebody acting out or trying to appear to have some mental problem. He says I'm on medication for mental illness, and nobody disputes that. And then he says I'm not getting my medication, they won't give it to me. Now I know that apparently on the second day of the trial when he said I haven't had my medication, the judge declared a recess. But can we agree that it would just be prudent, probably take a few days, I don't know how long it takes to get a medical exam done, but if he says this isn't somebody who has no history of mental illness, he has that, wouldn't it just be prudent for the trial judge to say let's just take a recess, get an examination, find out if there are jail records that say whether or not he's getting his medication, wouldn't that be the prudent thing to do? I'm not saying it's a legally required thing to do. Be prudent though, wouldn't it? Certainly under AEDPA you can believe that it would have been reasonable for the trial court to inquire into his competency, but if you also believe that perhaps on this record the trial court didn't have a bona fide doubt, then under AEDPA he's still not entitled to the determination that the state court has already made, which is that the trial court did not need to inquire into his competency to avoid a constitutional due process violation. Did the trial judge find that he was malingering, acting out, falsely claiming that he needed medication or anything like that? There is no evidence of the trial court's findings on the record. We're basing our determinations on what the state appellate court found on direct review. Mr. Smith? Good morning. Mr. Smith. I'm sorry. In order to properly proceed, I think, to the due process issue, let me first step back and address the ineffective assistance. There's no question about the deficient performance of the trial counsel. That's already been acknowledged by the state court of criminal appeals, as well as the federal district court. The question comes down to whether there was any type of prejudice, which is based on whether there was a reasonable probability that Mr. LaHood, had the matter been raised and considered, would have been found incompetent. And as the federal district court noted, and I think detailed, there is a laundry list of evidence that was known to the trial attorney, and she chose to disregard that, rather casting her own view that he was a misogynist, that he was using antics and trying to play psychologist when in fact she had no business doing so. Even as attorneys, we think we're quite intelligent, but sometimes we step outside our bailiwick. And in this case, she failed to conduct the necessary inquiry. So there's no strategic considerations here. She just failed to conduct the proper investigation to inform her as to what the next step would be. But even apart from that, from the evidence that she did have, that he was taking those medications as the court observed, and that she knew those were the type of medications that had been prescribed to people who had been found incompetent, but perhaps were recovering or becoming competent over the administration of the medication. So with that idea in mind, the fact that he was not allowing her to help him prepare for the trial, and then looking at even the trial conduct, where he was surprised about where the stages were that the trial was wrapping up so quick, he didn't know that he was even going to be in a situation of having to testify at that point and said that he felt coerced and there's clear confusion on the record. He had not had an, was not able to rationally consult with his attorney and understand the course of the proceedings. That's clear from a review of the transcript, and the Court of Appeals had that information as well. What part of the transcript says that? I'm sorry, Your Honor? You said that's clear from a review of the transcript that he couldn't rationally consult with his attorney. What is, where does it, where is that? During the, let's see, on the 26th was a jury selection, so the 27th, when the state was called upon of whether he wanted to testify, and he was wholly surprised that there were no additional defense witnesses, and he was kind of put in a position where he was going to be the only witness, and he was not prepared. He was confused. He expressed that he was coerced at that point, but ultimately, after being in that limelight and pressure, agreed that he would go ahead and testify, and began to testify at the end of the day, before the proceedings were adjourned for the day. Right, but isn't that actually rational? All of that, if you don't know that you're going to be testifying, and then all of a sudden, and you think there are other witnesses, and then you're the only witness, I don't, what's irrational about any of that? It seems that that would be rational to, if you're the defendant, and you don't, and your counsel hasn't prepared you to do a, put on your case, that all of those don't seem irrational do they? Well, and again, I am not a psychiatrist, I'm not a mental health professional. I know that we have three eminently qualified affidavits from two forensic mental health professionals, a psychiatrist, as well as a psychologist. The psychiatrist was head of the Meninger Clinic here in Houston, and he indicated that that was an irrational process, given that Mr. LaHood was going to be subject to cross-examination, which he was not prepared for, as well as that he had already a criminal history that was going to be introduced, and would be damaging at his trial. So did the head of the Meninger Clinic said that his response to being put in the spot that he'd have to testify without being prepared was irrational? Well, if you're going to... Where is that in the record? Well, it would be in the affidavit of Dr. Victor Serrano, the second affidavit, and I'm sure the court's had an opportunity. He says that he had an, that was an irrational reaction? That that did not, that was one of many factors indicating the, at best, intermittent competency of Mr. LaHood over the course of the trial, and his decompensation, that was at the beginning of the trial. So as he continues not to receive his medications from the jail medical staff, he is decompensating over that period of time, where it evolves to the point where he continually is complaining to the court, on the record, that he's not receiving his medications, that he's having difficulty understanding the proceedings. How many times did he complain to the court about the medication? A number of times, Your Honor. I haven't... More than two? Yes. Okay. And he also indicated that he was seeing things, and he was uncomfortable, and as I said, difficulty in understanding the questions. Do you dispute that he actually did very well on direct examination, in terms of making his points and that sort of thing? No, Your Honor, and I think what the court is doing is following kind of the reasoning of perhaps the lower courts... Which we're supposed to do, aren't we, under ed-ped-deference? Well, and I'm not talking about the federal district court, yes, and yes, that's correct, unless there was an unreasonable application of the facts, in which case, then that wouldn't be the situation, because if they're not determining the facts correctly, and it's clear and convincing evidence, it's otherwise. Yeah, you'd have to show clear and convincing evidence that their determination of the facts was wrong. Correct. Or you'd have to show that no reasonable jurist could find that it was, that there was no prejudice. Yes, ma'am. Okay. Okay, so... Can you do that? I believe so, and I believe Judge Hoyt agreed with me and set forth... Did he actually require them to do that? I'm sorry? I don't know. Did Judge Hoyt really apply ed-ped-deference? We don't need to resolve whether Judge Hoyt really applied it, but you're saying no reasonable jurist could have found he was not prejudiced. Well, of course, that's being taken from Richter v. Harrington, which analyzed a trial-type error where the attorney in that case failed to present blood expert evidence. This is a very different type of situation where the prejudice that we see, and this kind of also involves the due process argument, but that the failure to accord Mr. LaHood the due process right, and from counsel's standpoint, a failure for her to raise that issue before the trial court so that he would have due process rights accorded to him. And it's clear under Pate and Droop that that was a necessity where there is objective evidence before the court that gives rise to the bonafide doubt, which was the standard at the time in 2004 in April when this trial occurred. And with respect to that, we have to remember that the standard of establishing bonafide doubt under McDaniel v. State is whether there was recent severe mental illness, moderate retardation, or truly bizarre acts. Here, it's undisputed that we have recent severe mental illness. But that's only the beginning. So, stepping back again to the question of whether there was a reasonable probability that Mr. LaHood would have been found incompetent, the problem at the lower court, at the Court of Criminal Appeals, is that they disregarded in whole the very detailed, compelling medical testimony, which analyzed not only the record that the court is referring to, but as well the supporting medical records, which showed that, in fact, what he was saying was true. He was not receiving his medication, and it had not been adjusted properly. And that from a review in the medical records saw that he had a history of prior suicide attempts, institutionalization, prior hallucinations, and had a very pathetic history of severe mental illness. And it continued throughout this process. The unfortunate thing is, the people who the State, who should have provided him with the needed medications to maintain his competency, failed to do so. And that's been objectively established by the medical records. So there's . . . If the reader of the record did not agree with the district court that the Court of Appeals disregarded those things, but rather found that they were not conclusive in light of other evidence, does that make a difference? No. Because you could say, I've got this pool of evidence, and I think this is more important than that. And based upon that, I find there's no prejudice, which is what a reader could say, looking at the Court of Appeals decision. Not that they ignored the medical, but that they found that it wasn't, didn't put it over the top, and they believed this other evidence was more important to the situation. Well, the review of the Court of Criminal Appeals decision pays lip service that they considered . . . It says they did. Yes. So we have to take them at their word, given the antipodeference. Well, and I will get to that, if the Court may. But a review of these very extensive affidavits makes abundantly clear, from a medical standpoint, that Mr. LaHood was, according to one expert, probably incompetent. According to another one, definitely incompetent. Given that type of certainty, medical certainty, and remember, in Texas, under Chapter 46B, the procedure for raising the issue is under 46.004, but once the bona fide doubt is established and the Court makes an informal inquiry, it's referred to an expert for evaluation under 46B.024 of the Code of Criminal Procedure. And there is a whole laundry list of things for that expert to consider. And Dr. Serrano considered those and presented those to the Court in his affidavits, along with the detailed recitation of the objective medical evidence. Now, it's a police position that not considering that a substantive part of the consideration for the trial court would be in derogation of their responsibility as jurists, because it was compelling evidence. And laymen, many times, are unable to make that kind of assessment. Even in Pate, the Supreme Court has indicated. I'm trying to understand what you mean, not consider that a substantive part of consideration by the trial court. I'm sorry, not the trial court, but the Court of Criminal Appeals. All right. Yes, sir. And the Supreme Court in Pate also made clear that one doesn't need to be catatonic, raving, or frothing to be incompetent. And under DROP, it's clear that a defendant, in addition to not being, has to be competent in order to be tried and convicted, but that it cannot be intermittent competence, such that if a person is competent throughout portions of their trial and incompetent in others, that's insufficient under our Constitution. And so, it becomes clear, I think, from the quality and the quantity of the evidence that was before the Court of Criminal Appeals, that they made an unreasonable application of law in this case. Because looking merely at the demeanor and some of the responses, again, Pate addresses that, that those are to be considered perhaps in the ultimate disposition of whether a person is competent or not competent. But it does not dispose of the necessity for the procedural requirement in order to effectuate the constitutional protection of due process. Can you help me? Because to me, what you're saying sounds like you think that they weighed the evidence wrong. And if that's what the case is, I think that we have to, that at pedeference, we don't get to say, well, you weighed it wrong. They get to weigh it. So help me out to understand why ed pedeference doesn't preclude that sort of claim. Well, according to the Federal District Court, such deference is not required in that type of situation. Why? I mean, if I, tell, explain why ed pedeference doesn't apply to deferring to the weighing of evidence by the district, by the Court of Appeals, the last state court. Well, if there is, If there is a ample showing of clear and convincing evidence that overcomes the rebuttable presumption that those facts were determined properly, that disposes of the presumption because that has been overcome. So perhaps the presumption is integrated within that consideration. But certainly, whether there's presumption or no presumption, then it is overcome under 2254E by clear and convincing evidence. In fact, now that I think about it, I think there is a statement in that. So that requires a determination that the evidence which overcomes the presumption is clear and convincing. Correct, your honor. And then in that connection, your argument is that the appeals court below, the Texas Criminal Court of Appeals. The court, that's our highest court, Texas Court of Criminal Appeals, sir. That they incorrectly determined that there was clear and convincing evidence? No, that they relied mostly on the demeanor of trial excerpts to selectively show that at different points in the trial, he, Mr. LaHood, was giving answers that perhaps could be considered logical or explanatory of his position. So I misspoke. So what happened then is that there's the presumption of deference. Yes. He only can overcome with clear and convincing evidence. Correct, sir. They made a determination that the evidence was not clear and convincing. No, that the, well, they made the, yes, they made that determination, although they didn't use those terms because they weren't analyzing under AEDPA. But they relied on the demeanor, some trial excerpts, as well as the affidavits of trial counsel, who, of course, we all understand is not disinterested in this case, and had actually, in her affidavits, indicated that she was unaware that Mr. LaHood had attempted suicide, yet in her closing argument referenced that he had prior suicide attempts. So, in addition, the Court of Criminal Appeals, in remanding the case, or directing an order to the district court, ordered his trial counsel to provide letters that she supposedly had indicating that he was expressing thoughts clearly and interacting her, but when she was called upon to produce that, they had mysteriously disappeared. So this is the person upon which the Court of Criminal Appeals is relying, in great part, to make its decision. But not giving, certainly, any kind of ample credence to these very extensive and very specific affidavits that detail, not only Mr. LaHood's history, as established by the jail medical records, because apparently there was some history there, but also about the medication aspect, what the impact would be, and then looking at the transcripts, how the impact of that, and his particular severe mental illness. It was common where there would be episodic fluctuations between competency and incompetency. And in fact, in this court, a number of years ago, Buchion was a case which is very similar to this one. And in that case, the Fifth Circuit here made reference to that, the fact that if there's episodic incompetency. What's the name of the case? That's insufficient. Name of the case? Buchion, Your Honor. Buchion? Yes, and I can give you a citation if you'd like. We have it, I'm sure. What did he not do at trial that a competent person would have done to help his case? What did Mr. LaHood do? What did he not do that if he were competent, he would have done? Well, I think that he would have. I'm trying to get the prejudice issue. Well, yes. Well, the prejudice issue, okay, from that standpoint. I like the sleeping lawyer question. You know, if the lawyer hadn't been asleep, what difference did it make that he went to sleep? Okay, are you asking about, then, the lawyer? Are you asking about Mr. LaHood? I'm asking about Mr. LaHood. Okay. What could he have done at trial differently had he not been, as you say, incompetent? Well, I think, you know, the question is, and Dusky has enacted in our Chapter 46, that the question of whether a person's competent is whether they have a rational, an ability to rationally consult with counsel and assist him in his defense. It's clear from the record that at different points, he didn't even know what was going on, that he didn't know there wasn't going to be any defense, that he was going to be called upon at that point, and there wasn't going to be this individual he referred to as Gerald Shedd. There wasn't going to be any type of expert testimony. That's not an irrational thing. That's the court communication with his client. Well, the definition of, I apologize, Your Honor. The definition of competency is what I'm talking about. I'm showing illustrations that would reflect. There's two components of that. So one of them is a sufficient present ability to rationally consult with counsel and assist in your defense, and the other is, same type of thing, sufficient present ability to understand the proceedings. Mr. Smith. Yes, sir. You've exceeded your time. You have five minutes on rebuttal. I have a minute, Your Honor, you said? You have exceeded your time. Oh, well, okay. Thank you. Ms. Solomon, you have five minutes on rebuttal. Why shouldn't we find that it's clear and convincing and that E's been satisfied? Because, I mean, they do have a whole lot of experts, and the affidavit here is pretty, has some weird parts to it, and she didn't produce these other letters. Why shouldn't we find that by clear and convincing evidence it was wrong? First, with regard to the affidavits, it's important to remember that these were written on state habeas review. These experts have never examined Mr. LaHood, let alone at the time of trial. The only evidence that we have regarding Mr. LaHood's behavior and his demeanor at the time of trial come. Yeah, I guess that's part of my problem, counsel. That goes back to the question I asked you earlier, and if all these things are based on somebody now trying to determine whether or not he was confident on a day certain at some point in the past, why not just take a recess, have an examination, or see if he's getting his medication, look at, I mean, it just seems like that's prudent. I understand, I agree with you. It's very difficult now for somebody to take a backward look and say, based on his behavior in court on this day, I'm determining that he was or was not, whatever the opinion is, it's difficult to make that on what obviously are snapshots of what went on in a particular day. And I'm, go ahead and answer Judge Elrod's question, but it's just very troubling to me that if all this is going on, and again, we're not talking about somebody who did not have a history of mental illness, but just seemed to be acting out to try to appear to be mentally ill, not to be convicted. He had a history, he's taking medication. All that apparently is undisputed, and everybody just goes forward. You don't even have to answer. You can answer Judge Elrod. First, with regard to the prejudice inquiry, also, I would disagree that these affidavits so conclusively find that he was incompetent at the time of trial. I don't think that these experts could find that professionally, given that they've never examined Mr. LaHood or ever, let alone, as I said, at the time of trial. I think they, at most, surmise retrospectively that in reviewing his medical records and the trial transcripts, he might have been incompetent. And mostly what the experts are saying is that trial counsel should have further investigated, which is some, his mental health history specifically, which is something that the state court accounted for in its deficiency finding. Again, that in no way relieves Mr. LaHood of his burden of proving prejudice. That's clear under Strickland. In addition to trial counsel's affidavit, the state court, the CCA, specifically pointed to a review of the trial transcripts and made presumptively correct findings that Mr. LaHood, during trial, disclosed pertinent facts and events, understood the adversary nature of the proceedings, and put on a favorable defensive theory. All Mr. LaHood has provided are medical records establishing that he was mentally ill and hadn't received some medication, which is not getting at the crux of legal competency, which is the ability to understand proceedings. But I don't know how you establish that you're mentally ill, other than medical records that say you're mentally ill. What else would a mentally ill person need to do to establish that they were mentally ill? Well, of course, in this case. Other than have a psychiatrist say it. Of course, in this case, the state court already found that what Mr. LaHood has presented isn't enough. And it would be very difficult in light of trial counsel's affidavit. It's always going to be very difficult to retrospectively prove incompetency when your attorney is getting directly at the crux of legal competency and saying, I was able to communicate with my client. He was understanding his proceedings. We could hypothesize that there are other things he could have presented. Testimony from other witnesses who were there at the time of trial, who could establish that he was unable to communicate, unable to assist in his defense. His medical records show that he was mentally ill and not receiving medication. But they don't show that he was unresponsive, catatonic, things that might much more conclusively establish that he was legally incompetent. There is this third way. You don't have to be catatonic or bizarre. Certainly, but mental illness alone, even unmedicated, is certainly not enough. It's certainly not per se evidence of legal incompetence. Given that that's all his medical records establish, in combination with trial counsel's affidavit, unequivocally stating that he was able to communicate with her, and the state court's existing finding that that is not enough to establish prejudice under Strickland. Unless no reasonable jurist could agree with the state court's determination, Mr. Litt is not entitled to relief. Thank you. We'll call the next.